UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 JAN 13  AM 9: 37

CLERK

BY _____
DEPUTY CLERK

MARCELLA RYAN and
JOHN HERBERT,
on behalf of themselves and
all others similarly situated,

      Plaintiffs,

      v.

SYLVIA MATHEWS BURWELL,
Secretary of Health and Human Services,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 5:14-cv-00269

**OPINION AND ORDER RE:
PLAINTIFFS' MOTION TO CERTIFY A REGIONAL CLASS
(Doc. 13)**

Plaintiffs Marcella Ryan and John Herbert are Medicare beneficiaries who receive home health care services. They allege that the Secretary of Health and Human Services has systematically failed to follow her own regulations and guidance governing appeals of Medicare coverage for home health care services. (Doc. 1 at 1, ¶ 1.) They allege that Medicare policy requires Medicare contractors and appellate reviewers to give "great weight" to a prior favorable final appellate decision finding a beneficiary to be "confined to the home" (or "homebound") when deciding whether a beneficiary is homebound in a subsequent appeal. (*Id.*)[1] Plaintiffs allege that the Secretary has failed to apply that policy, and "routinely denies Medicare coverage for home health services on the basis that Plaintiffs were 'not homebound,' despite the fact that administrative law judges have issued favorable final decisions finding Plaintiffs homebound." (*Id.* at 1–2, ¶ 2.) Plaintiffs seek declaratory and injunctive relief, and in particular seek an order that the Medicare review process be corrected and that Plaintiffs' denied claims for coverage be "re-review[ed]." (*Id.* at 24, ¶ 4(e).)

_____

[1] Plaintiffs refer to this policy as the "Prior Favorable Homebound Decision policy" (*e.g.*, *id.* at 4, ¶ 14) or simply the "Prior Favorable Homebound policy" (*e.g.*, *id.* at 15, ¶ 67).

Plaintiffs have moved to certify a regional class under Rule 23 of the Federal Rules of Civil Procedure. (Doc. 13.) They seek to define the class as:

> All beneficiaries of Medicare Parts A or B, in Connecticut, Maine, Massachusetts, New Hampshire, New York, Rhode Island, and Vermont (Medicare Administrative Contractor Jurisdiction K) who (a) have received Medicare coverage for home health nursing or therapy services on the basis of a "favorable final appellate decision" and (b) who have subsequently been denied, or will be denied, coverage for additional services on the basis of not being homebound, on or after January 1, 2010.

(Doc. 1 at 3–4, ¶ 12; Doc. 34 at 9.) The Secretary opposes the Motion (Doc. 24), and Plaintiffs have filed a Reply (Doc. 34). The court heard argument on September 21, 2015. Final briefing on the matter was completed on December 7, 2015. For the reasons stated below, Plaintiffs' Motion to Certify a Regional Class (Doc. 13) is GRANTED.

## Background

Previously in this case, the court outlined some of the background of the Medicare and Medicaid programs, as well as the statutory and regulatory requirements for eligibility for home health benefits under Medicare. (Doc. 44 at 1–3.) Eligibility for home health benefits under Medicare is determined by statute, 42 U.S.C. § 1395f(a)(2)(C), and further defined by regulation, 42 C.F.R. § 409.42. One of the requirements for eligibility is that the beneficiary be confined to his or her home (or "homebound"). Under § 1395f(a), an individual is confined to his or her home

> if the individual has a condition, due to an illness or injury, that restricts the ability of the individual to leave his or her home except with the assistance of another individual or the aid of a supportive device (such as crutches, a cane, a wheelchair, or a walker), or if the individual has a condition such that leaving his or her home is medically contraindicated. While an individual does not have to be bedridden to be considered "confined to his home", the condition of the individual should be such that there exists a normal inability to leave home and that leaving home requires a considerable and taxing effort by the individual.

Determining whether a beneficiary is homebound is a fact-intensive inquiry.

The court also previously outlined the administrative claims review process. (*See* Doc. 44 at 3–4.) There is a multiple-level administrative process for Medicare determinations and review that applies when a claim is premised on a beneficiary being homebound. *See generally* 42 U.S.C. § 1395ff; 42 C.F.R. § 405.904. An "initial determination" is made by a Medicare Administrative Contractor (MAC). *See* 42 C.F.R. § 405.904(a)(2). A beneficiary may then

2

request a "redetermination." *Id.* Following the redetermination, the beneficiary may pursue
administrative appeals, beginning with a request for "reconsideration," which is performed by a
"Qualified Independent Contractor (QIC)." *Id.* After reconsideration, a beneficiary may request
a hearing before an administrative law judge (ALJ). *Id.* Finally, a beneficiary may request
"review" by the Medicare Appeals Council. *Id.*[2]

Manuals issued by the Department of Health and Human Services' Centers for Medicare
and Medicaid Services (CMS) provide guidance to the decisionmakers in the administrative
process. Two of those manuals are relevant in this case. The Medicare Program Integrity
Manual (MPIM) sets policies regarding how to conduct the "medical review" necessary to
determine whether to pay a claim. Ctrs. for Medicare & Medicaid Servs., https://www.cms.gov/
regulations-and-guidance/guidance/manuals/internet-only-manuals-ioms-items/cms019033.html.
The Medicare Claims Processing Manual (MCPM) sets policies regarding adjudicating
administrative appeals of Medicare claim denials. Ctrs. for Medicare & Medicaid Servs., https://
www.cms.gov/regulations-and-guidance/guidance/manuals/internet-only-manuals-ioms-
items/cms018912.html.

In 2004, language was added to both the MPIM and the MCPM creating the Prior
Favorable Homebound policy at issue in this case. The 2004 language instructed Regional
Home Health Intermediaries (RHHIs) to:

> Afford the favorable final appellate decision that a beneficiary is "confined to
> home" great weight in evaluating whether the beneficiary is confined to the home
> when reviewing services rendered after the service date of the claim addressed in
> the favorable final appellate decision unless there has been a change in facts (such
> as medical improvement or an advance in medical technology) that has improved
> the beneficiary's ability to leave the home.

CMS Manual System, Pub. 100-08 MPIM, Transmittal R71PI2, at 54 (Apr. 9, 2004),
https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R71PI2.pdf;
CMS Manual System, Pub. 100-04 MCPM, Transmittal 381, § 50.7.11(D), https://
www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R381CP.pdf
(Nov. 26, 2004).

---

[2] Judicial review of the Secretary's final decision is also available. *See* 42 U.S.C.
§ 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g); 42 U.S.C. § 405.904(a)(2).

RHHIs, together with "carriers," are now known as MACs.  (*See* Doc. 44 at 3 ("MACs were formerly known as 'fiscal intermediaries' for Part A and 'carriers' for Part B.").)  Since MACs are involved only at the determination and redetermination stages of the administrative process, the Prior Favorable Homebound policy language did not directly apply to the "reconsideration," "hearing," or "review" stages.[3]  Nevertheless, QICs, ALJs, and the Medicare Appeals Council are required to give "substantial deference" to CMS program guidance (including program manual instructions) if applicable to a particular case, and are required to explain their reasons for declining to follow those policies.  *See* 42 C.F.R. §§ 405.968(b)(2), (3) (QICs); 405.1062(a), (b) (ALJs and the Medicare Appeals Council).

In 2008, CMS deleted the Prior Favorable Homebound policy language from the MCPM. CMS Manual System, Pub. 100-04 MCPM, Transmittal 1485, https://www.cms.gov/ Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1485CP.pdf (Mar. 28, 2008). The Secretary asserts that, through an oversight, the language in the MPIM was not deleted at the same time.  (Doc. 51 at 2.)  According to the Secretary, this litigation brought that oversight to CMS's attention.  (*Id.*)  The language remained in the MPIM until it was deleted effective August 3, 2015.  CMS Manual System, Pub. 100-08 MPIM, Transmittal 601, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R601PI.pdf (July 2, 2015).

## Analysis

### I.     Composition of the Proposed Class

#### A.     Individuals with Lapsed Claims

In its October 19, 2015 Entry Order, the court observed that 42 U.S.C. § 405(g) contains a 60-day limitations period.  (Doc. 56 at 2.)  Noting that there might be some members of the purported class whose claims might have lapsed under that limitations period, the court requested that the parties brief the issue of whether individuals with lapsed claims must be excluded from the class.  (*Id.*)  Plaintiffs assert that individuals with lapsed claims should not be excluded from the class for two reasons: (1) the Secretary failed to raise the 60-day rule as a defense, thereby waiving that statute of limitations; and (2) the 60-day rule should be tolled because beneficiaries

---

[3] Although 42 U.S.C. § 1395ff places redeterminations within the category of "initial determinations" rather than the "appeals" category, the MCPM (which concerns appeals) describes redetermination as the "first level of appeal."  That may explain why the Prior Favorable Homebound policy language was added to the MCPM as well as the MPIM.

could not have known that the Secretary was not following her own policy.  (Doc. 59 at 3–10.)
The Secretary maintains that the statute-of-limitations defense was not waived and that there is
no basis for tolling.  (Doc. 63 at 1–4.)

The court begins with the waiver issue.  It is true that the Secretary may waive § 405(g)'s
60-day requirement.  *See City of New York v. Heckler*, 742 F.2d 729, 736 (2d Cir. 1984), *aff'd
sub nom. Bowen v. City of New York*, 476 U.S. 467 (1986).  It is also true that the Secretary did
not raise that requirement as a defense in her Motion to Dismiss (Doc. 19) or in her Answer
(Doc. 48), and did not otherwise discuss the issue until the court raised it *sua sponte* in the
October 19, 2015 Entry Order.

Where litigation has proceeded past the point at which a limitations defense is normally
required to be raised, courts ordinarily should not raise such defenses *sua sponte*.  *Pino v. Ryan*,
49 F.3d 51, 53 (2d Cir. 1995).  Here, however, the litigation has not yet proceeded past the class-
certification stage, and it makes sense to examine whether some class members might have
lapsed claims.  This court's decision in *Mason v. Bowen* is instructive—the issue of lapsed
claims under § 405(g) was not raised until after the plaintiffs had moved for class certification.
Nos. 83-224, 83-231, 83-390, 83-391, 83-406, 1986 WL 83399 at *1–2 (D. Vt. May 21, 1986).
Here, once the court suggested that the 60-day limitation might have an impact on the
composition of the class, the Secretary promptly responded and argued that the class definition
should be limited.  The court concludes that there was no waiver.

The second issue is whether the 60-day limitations period should be equitably tolled.  The
Second Circuit in *Heckler* held that "[w]here the Government's secretive conduct prevents
plaintiffs from knowing of a violation of rights, statutes of limitations have been tolled until such
time as plaintiffs had a reasonable opportunity to learn the facts concerning the cause of action."
*Heckler*, 742 F.2d at 738.  Equitable tolling was warranted in that case because the Social
Security Administration had disregarded the law requiring an individual assessment of the
residual functional capacity of each claimant by informally, and without public disclosure,
adopting a practice under which many disability claimants with mental impairments were
presumed to retain a residual functional capacity to perform at least unskilled work.  Claimants
would learn of the denial or loss of benefits, but "did not and could not know that those adverse
decisions had been made on the basis of a systematic procedural irregularity."  *Id.*

Plaintiffs assert that the same is true in this case, since the Secretary opted not to follow the Prior Favorable Homebound policy without any publication or announcement to that effect. (*See* Doc. 59 at 9.) The Secretary maintains that claimants could have discovered the Secretary's practice by simply inspecting the text of a decision denying benefits. According to the Secretary, "if the decision's text did not refer to the beneficiary's prior favorable final appellate homebound decision, that beneficiary would be on notice that the prior decision was not considered and therefore not given 'great weight.'" (Doc. 63 at 4.)

As noted above, QICs, ALJs, and the Medicare Appeals Council are required to give "substantial deference" to CMS program guidance (including program manual instructions) if applicable to a particular case, and are required to explain their reasons for declining to follow those policies. By the time a claimant with a prior favorable final appellate decision on ability to leave the home exhausts her administrative appeals, she could determine whether the Prior Favorable Homebound policy was applied in her case. Multiple levels of review provided repeated opportunities for claimants to recognize that the Secretary had not followed the Prior Favorable Homebound policy. There is no basis for equitable tolling in this case. Accordingly, any class shall generally be limited to claimants who satisfied § 405(g)'s 60-day filing requirement as of March 5, 2015, the date Plaintiffs filed for class certification. *See Mason*, 1986 WL 83399, at *2.[4]

### B.    Whether the Class Must be Closed

The "great weight" language was deleted from the MPIM effective August 3, 2015. On that date, the Prior Favorable Homebound policy was no longer in effect for any level of Medicare review. Plaintiffs assert that their due process claim "is independent of the claim brought under the Prior Favorable Homebound policy, and this claim alleges ongoing harm to the class as a result of the due process violation." (Doc. 59 at 10.) According to Plaintiffs, the Secretary's removal of the policy should not result in a closed class "due to the ongoing harm to the class as a result of the Secretary's violation of due process." (*Id.* at 11.) The Secretary contends that Plaintiffs' due process claim is, like Plaintiffs' other claims, based on the existence of the now-repealed Prior Favorable Homebound policy. (Doc. 63 at 5.) The Secretary also

---

[4] The Secretary concedes that tolling may be appropriate where an individual putative class member has a mental condition that prevented him or her from filing a timely appeal. (Doc. 63 at 4.) The court will not exclude from the class any claimant who can prove a particularized, individual basis for tolling § 405(g)'s 60-day filing requirement.

maintains that, even if that were not so, Plaintiffs have failed to state an independent due process claim because the multi-level Medicare administrative appeal process supplies sufficient process. (*Id.*)

The court concludes that Plaintiffs can state no due process violation for Medicare benefits claims commenced on or after August 3, 2015. "Governmental action may be challenged as a violation of due process only when it may be shown that it deprives a litigant of a property or a liberty interest." *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 91 (2d Cir. 2015) (quoting *Gen. Elec. Co. v. N.Y. State Dep't of Labor*, 936 F.2d 1448, 1453 (2d Cir. 1991)). Removal of the Prior Favorable Homebound policy does not implicate any property or liberty interest for claims filed on or after August 3, 2015.[5] Plaintiffs cite no statute or regulation mandating the Prior Favorable Homebound policy. If Plaintiffs prevailed on their due process claim, then the Secretary might be deterred from updating the MPIM and MCPM in any way, for fear that—even if the original guidance proved completely unworkable—it could never be taken away once it was given. The court accordingly concludes that the class must be closed so as not to include individuals who filed new claims for Medicare benefits on or after August 3, 2015.

## II.    Requirements for Class Certification

Under Rule 23, "[o]ne or more members of a class may sue . . . as representative parties on behalf of all members" only if the following four prerequisites are satisfied:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The party seeking class certification bears the burden of showing that the proposed class satisfies those four requirements (dubbed "numerosity," "commonality," "typicality," and "adequacy of representation," respectively). *See Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376, 385 (2d Cir. 2015). "A class may be certified only if, 'after a

---

[5] Nor do Plaintiffs identify any procedural infirmity with the removal of the Prior Favorable Homebound policy. There is no dispute that the Secretary may make changes to the MPIM and MCPM, and the "transmittals" that CMS uses to communicate those changes provide sufficient notice.

rigorous analysis,' the district court is satisfied that the prerequisites of Rule 23(a)" are established. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)).

In addition to the prerequisites of Rule 23(a), a plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 133 S. Ct. at 1432. In this case, Plaintiffs rely on Rule 23(b)(2), asserting that the Secretary "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

### A.       Numerosity

"Numerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). Plaintiffs rely on the February 9, 2015 affidavit of Steve Schlipf, a software developer who has access to the computer database of cases at Vermont Legal Aid. Schlipf says that he "searched for Medicare beneficiaries that had a previous favorable Administrative Law Judge decision made on or after July 1, 2001 and a subsequent denial of a claim at Redetermination on or after January 1, 2010." (Doc. 13-2 ¶ 3.) According to Schlipf, he determined from his search that, in Vermont alone, there are at least 107 unique beneficiaries who had a redetermination denial on or after January 1, 2010, and who also had a favorable ALJ decision for one or more episodes in a previous case. (*See id.* ¶ 4.)

The Secretary asserts that the court should give no weight to Schlipf's affidavit, since his computer search was not limited to claims for home health services, but rather searched for *all* claims by Medicare beneficiaries that had a previous favorable ALJ decision on some unspecified issue. (Doc. 60 at 4.) Plaintiffs reply that the "overwhelming majority of the cases identified in the sample were home health cases" because "[d]uring the relevant time period, the Medicare Advocacy Project of Vermont Legal Aid was focused on only doing home health cases." (Doc. 64 at 3.) In light of that clarification, it appears that Schlipf's affidavit supports the conclusion that there are at least 40 members in the proposed class. It may be that some of the 107 individuals' claims were not for home health services. But the exclusion of those claims is more than offset by the fact that Vermont's total Medicare population is only about 2% of the

Medicare population within the region covered by the class (New England plus New York). (*See* Doc. 13-1 at 20.)[6]

Of course, as the Second Circuit has observed:

[T]he numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members.

*Pa. Pub. Sch. Emps. Ret. Sys.*, 772 F.3d at 120 (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). These factors support the conclusion that joinder of all members is impracticable. Judicial economy would be favored by a single action focusing on the Prior Favorable Homebound policy. Potential plaintiffs are distributed throughout New England and New York, and are by definition elderly and disabled. Many potential plaintiffs may lack substantial financial resources, and would be unlikely to be able to sue separately.[7] Finally, the court notes that the Secretary does not explicitly challenge the element of numerosity. For all these reasons, the court concludes that Plaintiffs have met their burden of establishing numerosity.

### B.      Commonality and Typicality

"The commonality requirement is met if there is a common question of law or fact shared by the class." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010). Reciting common "questions" is not sufficient to establish commonality; instead the plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

---

[6] The Secretary offers her own analysis of the number of potential claimants, ultimately concluding that there are at least 131 and as many as 458 with live appeals involving claims that accrued between January 1, 2010 and July 2, 2015. (*See* Doc. 60 at 2–4.) The Secretary notes that some of those claimants are providers and Medicaid state agencies rather than individuals. (*Id.* at 4.) Since the proposed class is limited to "beneficiaries," the number of class members is smaller. However, the Secretary does not describe what portion of the potential claims it identified belong to providers and state agencies, so the court cannot conclude that the Secretary has shown that the number of potential claimants is less than 40.

[7] As the above discussion regarding the closing of the class suggests, the pool of prospective plaintiffs is not fluctuating or growing to involve future class members. Nevertheless, joinder is impracticable in light of the presumption based on the size of the class and for the other reasons discussed above.

2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  The plaintiffs'
"claims must depend upon a common contention" that is "of such a nature that it is capable of
classwide resolution—which means that determination of its truth or falsity will resolve an issue
that is central to the validity of each one of the claims in one stroke." *Id.*  Put another way:
"What matters to class certification . . . is not the raising of common 'questions'—even in
droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to
drive the resolution of the litigation." *Id.* (omission in original) (quoting Richard A. Nagareda,
*Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

    "Typicality requires that the claims or defenses of the class representatives be typical of
the claims or defenses of the class members." *Brown*, 609 F.3d at 475.  "This requirement 'is
satisfied when each class member's claim arises from the same course of events, and each class
member makes similar legal arguments to prove the defendant's liability.'" *Id.* (quoting *Marisol
A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).  "When it is alleged that the same unlawful
conduct was directed at or affected both the named plaintiff and the class sought to be
represented, the typicality requirement is usually met irrespective of minor variations in the fact
patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37.  "The commonality and
typicality requirements often 'tend to merge into one another, so that similar considerations
animate analysis' of both." *Brown*, 609 F.3d at 475 (quoting *Marisol A.*, 126 F.3d at 376).

    The parties' core dispute regarding class certification is whether Plaintiffs have met the
commonality and typicality requirements.  The Secretary maintains that Plaintiffs cannot meet
those requirements because each determination of whether a beneficiary is confined to the home
is a "fact-bound, beneficiary-specific determination." (Doc. 24 at 11.)  The Secretary contends
that the only common question of law or fact is the alleged failure to apply the "great weight"
language of the MPIM, and that is a beneficiary-specific question because the "great weight"
standard is not dispositive. (Doc. 24 at 12, 14.)  According to the Secretary, ordering application
of the "great weight" standard to every appeal covered by the class definition would not generate
any common answers apt to drive the resolution of the litigation.  Instead, the Secretary asserts
that "[r]egardless of whether the . . . standard is applied, each class member's claim that he or
she is entitled to Medicare coverage for home health-care services will turn on a host of case-
specific facts, requiring individualized determinations, and so will not present common or typical
issues for purposes of Rule 23(a)." (*Id.* at 14.)

10

Plaintiffs assert they do not challenge the outcome of any particular case, but instead challenge the *process* used to review home health claims following a prior favorable Medicare appellate decision.  (Doc. 34 at 3; *id.* at 4 ("[T]he central, common issue presented by this litigation is the process the Secretary utilizes to review and adjudicate Medicare claims.").) Plaintiffs insist that the class members have the "same injury" in that "they all share a review process for Medicare coverage of home health services which fails to follow the procedure and criteria required for review of claims for beneficiaries who received a prior determination by Medicare that he or she was confined to home."  (Doc. 34 at 3–4.)  Plaintiffs further contend that their claim is capable of a classwide resolution, in that they request "that the Secretary be ordered to stop ignoring the procedure and criteria that must be followed when Medicare reviews home health coverage claims for beneficiaries previously found homebound."  (*Id.* at 5.)

The court concludes that the class members have suffered the same injury, and that the claims of the class representatives are typical of the class members' claims.  The injury that the class members have each suffered is that they were deprived of the benefit of the Prior Favorable Homebound policy in the course of the administrative claims review process.  It is true that the "great weight" standard is not necessarily dispositive of any particular Medicare claim.  But each class member was entitled to the benefit of the "great weight" standard—either directly at the determination stage or in the administrative appeals process insofar as QICs, ALJs, and the Medicare Appeals Council were required to give "substantial deference" to that standard and were required to explain their reasons for declining to follow it.

Application of that standard may make no difference to the outcome in some claims, but failure to apply that standard is nonetheless a sufficient injury and was suffered by all class members.  *See De La Rosa v. Holder*, 598 F.3d 103, 108 (2d Cir. 2010) (improper standard of review is the type of error that requires remand).[8]  As this court previously stated, the Prior Favorable Homebound policy "is not merely procedural—it directly affects plaintiffs' rights to receive insurance benefits for home health care services."  (Doc. 44 at 17.)  Resolution of this

---

[8] Use of the improper standard does not require remand "if it would be pointless or futile, such as where there is an alternative and sufficient basis for the result, the error is tangential to non-erroneous reasoning, or the overwhelming evidence makes the same decision inevitable." *Id.*  Here, it is impossible to perform that futility analysis at the present level of abstraction.  The court nevertheless concludes that the commonality and typicality elements are met because all class members share the same basic injury arising from the same failure to apply the Prior Favorable Homebound policy.

litigation will not resolve each individual class member's claim for Medicare home health care, but it will resolve all class members' challenges to the process employed for resolving those individual claims.

### C.     Adequacy of Representation

"The adequacy requirement is that 'the representative parties will fairly and adequately protect the interests of the class.'" *Brown*, 609 F.3d at 475 (quoting Fed. R. Civ. P. 23(a)(4)). "Adequacy 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). "In order to defeat a motion for certification, however, the conflict 'must be fundamental.'" *Id.* (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001)).

Here there is no dispute as to the qualifications, experience, and ability of Plaintiffs' attorneys. The Secretary contends, however, that Plaintiffs Ryan and Herbert cannot fairly and adequately protect the interests of the class because they are "dual eligible" beneficiaries, while some other class members might not be. (Doc. 24 at 17.) As the court previously noted, where Medicare rejects a claim brought by a "dual eligible" recipient like Ryan or Herbert, Medicaid reimburses them so that they are not personally liable for the cost of the home health care. (*See* Doc. 44 at 3.) Individuals who are not "dual eligible" may be personally financially liable if Medicare rejects their claims. The Secretary therefore contends that "at least one class representative should have a claim typical of that group of class members who have a direct interest in the outcome of the proceedings." (Doc. 24 at 17.)

The court concludes that Ryan and Herbert's interests are not fundamentally antagonistic to the interests of other members of the class. On the issue this litigation presents, the court sees no conflict between the interests of those claimants who are "dual eligible" and those who are not. This case is different than *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), where the representative parties had an interest in immediate payments while other class members had a competing interest in payments over time. Plaintiffs here do not seek damages at all. Thus, *In re Literary Works in Electronic Databases Copyright Litigation* is also distinguishable; there was a fundamental conflict in that case because the named plaintiffs had no incentive to maximize the

12

recovery for another category of plaintiffs. 654 F.3d 242, 254 (2d Cir. 2011). Neither is this case like *Brown v. Kelly*, where the class representatives had little incentive to oppose or defend against injunctive relief because they were already subject to court orders on the matter at issue. 609 F.3d at 480.

Even if Ryan and Herbert may not have precisely the same financial interest as class members who are not "dual eligible," this is not a case where their incentives are so weak that there is a fundamental conflict. As the court previously concluded in discussing their constitutional standing, Ryan and Herbert have robust interests in pursuing this litigation. They are seeking to protect a right which is theirs under the Medicare statute. They may face personal liability for future uncovered services. Ryan faces the possibility that Medicaid will seek to recover benefits from her estate after death. And both Herbert and Ryan have identified other areas where Medicare and Medicaid do not provide identical benefits. (*See* Doc. 44 at 7–8.)

> **D.      Type of Class Action—Rule 23(b)(2)**

Under Rule 23(b)(2), "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "[C]ertification of a class for injunctive relief is only appropriate where 'a single injunction . . . would provide relief to each member of the class.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (omission in original) (quoting *Dukes*, 131 S. Ct. at 2557). Plaintiffs assert that they meet Rule 23(b)(2)'s standard because they seek injunctive relief to remedy the Secretary's failure to follow her own regulations and guidance governing appeals of Medicare coverage for beneficiaries with a prior favorable homebound determination. (*See* Doc. 13-1 at 28.) The Secretary maintains that certification under Rule 23(b)(2) is inappropriate, but offers no reasons other than those advanced in opposition to the commonality and typicality elements. (*See* Doc. 24 at 16.) The court rejects those arguments for the reasons described above, and concludes that class certification under Rule 23(b)(2) is appropriate.

## Conclusion

For the reasons stated above, Plaintiffs' Motion to Certify a Regional Class (Doc. 13) is GRANTED. The action is certified as a class action under Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of all beneficiaries of Medicare Parts A or B, in Connecticut, Maine, Massachusetts, New

Hampshire, New York, Rhode Island, and Vermont (Medicare Administrative Contractor Jurisdiction K) who (a) have received Medicare coverage for home health nursing or therapy services on the basis of a "favorable final appellate decision" and (b) who have subsequently been denied, or will be denied, coverage for additional services on the basis of not being homebound, on or after January 1, 2010. Absent a particularized individual basis for tolling, the class is limited to claimants who satisfied 42 U.S.C. § 405(g)'s 60-day filing requirement as of March 5, 2015. The class is closed such that it does not include individuals who filed new claims for Medicare benefits on or after August 3, 2015.

Plaintiffs' counsel are appointed class counsel under Fed. R. Civ. P. 23(g).

Dated at Rutland, in the District of Vermont, this 13 day of January, 2016.

_____
Geoffrey W. Crawford, Judge
United States District Court